## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No. _____

STEVE RIVE, on behalf of himself, and all others similar situated,

    Plaintiff,

v.

ASPEN CORPORATIONS, INC., a Delaware corporation d/b/a Aspen Media,

    Defendant.

### CLASS ACTION COMPLAINT AND JURY DEMAND

Steve Rive ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Aspen Corporations, Inc. doing business as Aspen Media ("Defendant" or "Aspen Media"), in negligently and/or willfully contacting Plaintiff through unsolicited calls on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.* ("TCPA"), thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.    In a misguided effort to solicit business, Aspen Media routinely contacts potential customers through unsolicited phone calls placed with automatic telephone dialing equipment and featuring artificial and/or prerecorded voice messages. However, Aspen Media regularly places these phone calls to cellular telephone numbers, without consent, in violation of the TCPA.

2.    The TCPA strictly forbids nuisance phone calls exactly like those alleged in this Complaint – intrusive phone calls to private cellular phones, placed to numbers obtained without the prior express consent of the recipients.

3. Defendant's violations caused Plaintiff and members of the Class actual harm, including aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited phone calls, as well as the violation of their statutory rights.

4. Plaintiff and members of the Class suffered a concrete injury in fact, whether tangible or intangible, that is directly traceable to Defendant's conduct, and is likely to be redressed by a favorable decision in this action.

5. Plaintiff seeks an injunction stopping Defendant from making unsolicited phone calls, as well as an award of statutory damages under the TCPA, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

6. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.,* a federal statute. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 751-53 (2012). Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff seeks up to $1,500 in damages for each phone call in violation of the TCPA, which, when aggregated among a proposed class number in the tens of thousands, exceeds the $5,000,000 threshold for federal court jurisdiction. Further, Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of the Defendant, providing jurisdiction under 28 U.S.C. § 1332(d)(2)(A). Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

7. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant transacts significant amounts of business within this District.

8. Personal jurisdiction over Defendant is also proper in this District because Defendant, at all times herein mentioned, was doing business in the County of Boulder, State of Colorado, and a substantial part of the events giving rise to the claim, mainly the calls placed to Plaintiff's cellular number, occurred in this jurisdiction.

## PARTIES

9. Plaintiff is, and at all times mentioned was, a resident of the State of South Dakota, County of Minnehaha. He is, and at all times mentioned herein, was a "person" as defined by 47 U.S.C. § 153 (39).

10. Defendant is engaged in the business of business process outsourcing and marketing and research for business to business and business to customer services. Defendant is incorporated in Delaware that maintains its principal place of business at 450 Courtney Way, #101, Lafayette, Colorado 80026. Defendant is a "person" as defined by 47 U.S.C. § 153 (39).

## THE TELEPHONE CONSUMERS PROTECTION ACT OF 1991 ("TCPA")
## 47 U.S.C. §§ 227 *et seq.*

11. In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA),[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

12. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §§ 201 *et seq.*

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

14. The TCPA makes it unlawful "to make any call (other than for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1).

15. The FCC has made clear that "prior express written consent" is required before making any such telemarketing robocalls to wireless numbers. The express written consent must be signed and be sufficient to show the consumer received clear and conspicuous disclosure of the significance of providing consent and must further unambiguously agree to receive future phone calls.

16. Specifically, the FCC ordered:

"[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent; i.e., that the consumer will receive future calls that deliver prerecorded messages by on or behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (FCC Feb. 15, 2012) (footnotes omitted) (internal quotation marks omitted).

---

[3] *In Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014 (FCC July 3, 2003).

17. On July 10, 2015 the FCC released a Declaratory Ruling wherein it was confirmed that even if a consumer originally did provide "prior express consent" that caller has a right to revoke consent, using any reasonable method, including orally or in writing.[4]

18. The TCPA and its implementing rules make it unlawful for a person to "make" or "initiate" a call that violates the Act. 47 U.S.C. § 227(b)(1)(A).

## FACTUAL ALLEGATIONS

19. In an effort to gain business, generate revenue and promote product sales, Defendant runs marketing campaigns by way of mass calling campaigns. Defendant ran these marketing campaigns without the prior express written consent of the call recipients as required by law. Further, Defendant continued to call those prospective customers even after he or she revoked consent from future contact.

20. The TCPA was intended to give individuals control over how and where they received calls. When Defendant makes calls to individual's cellular telephones without their consent, it fails to address or represent the limitation imposed by the TCPA. In doing so, it takes control away from consumers and violations both the spirit and letter of the TCPA

21. Beginning no later than September 2018, Plaintiff began receiving unsolicited phone calls on his cellular telephone from Defendant.

22. On September 19, 2018, Plaintiff received an unsolicited phone call to his cellular telephone number from 303-756-9500. The September 19th call to Plaintiff's cellular telephone was automated and featured a prerecorded voice.

23. Again, on November 5, 2018, Plaintiff received another unsolicited phone call to his cellular telephone number from 303-756-9500.

24. Plaintiff also became distracted and aggravated as a result of receiving each of Defendant's phone calls.

---

[4] *In Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 30 F.C.C Rcd. 7996, 2015 WL 4387780 (FCC July 10, 2015); *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 692 (D.C. Cir. 2018).

25. The calls to Plaintiff's cellular telephone were automated and/or featured prerecorded voice messages.

26. The unsolicited phone calls placed to Plaintiff's wireless telephone were placed via and "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227(a)(1) and by using "an artificial or prerecorded voice" system as prohibited by 47 U.S.C. § 227 (b)(1)(A), which had the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place telephone calls to Plaintiff's cellular telephone.

27. The telephone number that Defendant, or its agents, called was assigned to a cellular telephone service for which Plaintiff incurred a charge for incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

28. These telephone calls constitute calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

29. Plaintiff did not provide Defendant or its agents prior express consent to receive unsolicited phone calls pursuant to 47 U.S.C. § 227 (b)(1)(A).

30. These telephone calls by Defendant or its agents therefore violated 47 U.S.C. § 227(b)(1).

31. Plaintiff is not alone in receiving these unsolicited phone call advertisements. In fact, numerous consumers have complained of receipt of similar unsolicited phone calls, stating they never provided their cellphone numbers to the Defendant, or provided any permission, let alone prior express written consent, to the Defendant to receive the offending phone calls, and yet continued to receive the phone calls.

32. Most notably, the Better Business Bureau website give Aspen Media an "F" rating. The website also contains an alert due to a pattern of complaint stating, "BBB files indicate a pattern of consumer complaints filed against this business. Specifically, these complaints allege customer service issues regarding harassment and unsolicited calls from the business, even after consumer request to be removed from the call list. BBB contacted the business to address the complaint allegations, however, the business failed to respond. *See*

https://www.bbb.org/us/co/lafayette/profile/market-research/aspen-media-market-research-0885-48953 (last visited on February 22, 2019).

33. The following complaints can be found on the Better Business Bureau Website:
   a. On the Better Business Bureau website, on November 28, 2017, one consumer wrote "This company has been harassing me and costing my company a lot of money over the years. They've called, literally, hundreds of times over the year and as you can see from the complaints here as well as over the rest of the internet they flat out refuse to stop calling."
   b. On the Better Business Bureau website, on October 31, 2017, one consumer wrote "Aspen Media continues to call and solicit their "free" magazines after repeated requests to no longer be contacted. No one in this office is interested in anything they have to offer. They are harassing up, and call 2-3 times a day, every single day of the week regardless of how many times I've told them to stop calling. While I try to tell them to stop, they merely hang up on me."
   c. On the Better Business Bureau website, on October 29, 2017, one consumer wrote "I keep receiving phone calls from Aspen Media. And even though all their calls roll thru to voice mail every time, they don't leave any message – and they keep calling back …over and over and over again. When I call back to the Caller ID number, I get a recorded message that allows me to route myself thru to a "List Management Mailbox" where their system tells me that I can leave my name and phone number to be removed from their system. BUT, there's a catch. Before you can leave your name and number, the system adds this additional warning message: ==== "Please not that due to call forwarding and other currently available telecommunication technologies we CANNOT GUARANTEE that Aspen will not contact you for any current or future campaign." ====Well that's one HUGE steaming pile of a LOOPHOLE! What's the point of providing my name and phone number to Aspen Media to get put on their Do Not Call list, if they won't absolutely guarantee that they WON'T STOP CALLING?"

    d. On the Better Business Bureau website, on September 1, 2017, one consumer wrote "For years we have been getting almost daily calls from Aspen Media and for years we have been asking them to take us off their call lists and never call again. We placed them on the National Do Not Call Registry years ago. They flagrantly violate our request and the government order."

    e. On the Better Business Bureau website, on August 17, 2017, one consumer wrote "They won't stop calling! They are rude and aggressive. If you try to get them to stop calling they hang up. If you reach out to them there is no one to talk to. Look at the other BBB reviews and complaints. Look at the ****** reviews. This company is harassing other companies."

    f. On the Better Business Bureau website, on September 21, 2016, one consumer wrote "I receive 3 telephone calls a day from this business. In reviewing other complaints regarding this company, I was able to locate an Opt Out email address: ****@aspen****rmation.com. I sent my phone number to this address but I am still receiving the same number of telephone calls per day. Please remove this phone number from your list. Thank You."

    g. On the Better Business Bureau website, on August 9, 2016, one consumer wrote "This company keeps calling me, trying to get me to buy sales tax publications that I have no use for. They have been calling frequently, and today they called and hung up when I answered. I do not want to receive their harassing sales calls any longer. I have emailed them, asking them to stop calling me."

*See* [https://www.bbb.org/us/co/lafayette/profile/market-research/aspen-media-market-research-0885-48953/complaints](https://www.bbb.org/us/co/lafayette/profile/market-research/aspen-media-market-research-0885-48953/complaints) (last visited on February 22, 2019).

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and on behalf of all others similarly situated ("the Class").

35. Plaintiff represents, and is a member of the Class, consisting of all persons within the United States who: (1) received a telephone call from Defendant or its agents; (2) on his or her

cellular telephone number; and (3) through the use of any automatic telephone dialing systems or artificial or prerecorded voice system as set forth in 47 U.S.C. § 227(b)(1)(A)(3), within four years prior to the filing of the Complaint through the date of final approval.

36. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the hundreds of thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

37. Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their cellular telephones by using unsolicited phone calls, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of said Plaintiff and the Class members. Plaintiff and the Class members were thereby damaged through Defendant's unlawful actions.

38. This suit seeks only statutory damages and injunctive relief on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

39. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendant's records or Defendant's agents' records.

40. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

    a. Whether, within the four years prior to the filing of this Complaint through the date of final approval, Defendant or its agents made phone call advertisements without the recipients' prior express written consent (other than a telephone call made for emergency purposes or made with the prior express consent of the called

       party) to a Class member using any automatic telephone dialing system or an artificial or prerecorded voice system, to any telephone number assigned to a cellular telephone service;

   b. Whether the equipment Defendant, or its agents, used to make the phone calls in question was an automatic telephone dialing system as contemplated by the TCPA;

   c. Whether Defendant, or its agents, systematically made telephone calls to persons featuring an artificial or prerecorded voice;

   d. Whether Defendant, or its agents, systematically made phone calls to persons who did not previously provide Defendant with their prior express written consent to receive such phone calls;

   e. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

   f. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

41. As a person that received at least one unsolicited phone call to his cell phone without Plaintiff's prior express written consent, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interest antagonistic to any member of the Class.

42. Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to individually seek legal redress for the wrongs complained of herein.

43. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act. Plaintiff and his counsel

are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so.

44. A class action is a superior method for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured by prosecuting Plaintiff's claims as a class action.

45. Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

**COUNT 1**

**NEGLIGENT VIOLATIONS OF THE TCPA**

**47 U.S.C. §§ 227 *ET SEQ.***

46. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

47. Defendant made unauthorized automated phone calls using an automatic telephone dialing system or prerecorded voice to the cellular telephone numbers of Plaintiff and other members of the Class without the prior express written consent.

48. Each such telephone call described herein was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendant was able to in effect make hundreds or thousands of phone calls simultaneously to lists of thousands of consumers' wireless phone numbers without human intervention.

49. The foregoing acts and omissions of Defendant and its agents constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq*.

50. As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

51. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## COUNT 2

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA

### 47 U.S.C. §§ 227 *ET SEQ.*

52. Plaintiff incorporates by reference paragraphs 1-51 of this Complaint as though fully stated herein.

53. Defendant made unauthorized automated phone calls using an automatic telephone dialing system or prerecorded voice to the cellular telephone numbers of Plaintiff and other members of the Class without the prior express written consent.

54. Each such telephone call described herein was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendant was able to in effect make hundreds or thousands of phone calls simultaneously to lists of thousands of consumers' wireless phone numbers without human intervention.

55. The foregoing acts and omissions of Defendant constitutes numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227 *et seq.*

56. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

57. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court to grant Plaintiff and the Class members the following relief against Defendant:

### FIRST COUNT FOR NEGLIGENT VIOLATION OF THE TCPA
### 47 U.S.C. §§ 227 *ET SEQ.*

58. As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

59. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### SECOND COUNT FOR KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA
### 47 U.S.C. §§ 227 *ET SEQ.*

60. As a result of Defendant's, and Defendant's agents', willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

61. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

\* \* \*

62. An order certifying the Class as defined above, appointing Plaintiff Straczynski as a Class Representative, and appointing the Law Offices of Ronald A. Marron as Class Counsel.

63. An award of reasonable attorneys' fees (in the event of a class recovery) and costs.

64. Any other relief the Court may deem reasonable, just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

\* \* \*

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that Defendant take affirmative steps to preserve all recordings, data, emails, documents and all other tangible things that relate to the allegations herein, Plaintiff or the putative class members, or the placing of telephone calls, the events described herein, any third party associated with any telephone call, campaign, account or file associated with Plaintiff. These materials are very likely relevant to the litigation of this claim. If Defendant is aware of any third party that has possession, custody or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials, and notify the undersigned of the circumstances immediately so that counsel may take appropriate action. This demand shall not narrow the scope of any independent document preservation duties of Defendant.

Dated: February 25, 2019        *s/ Alexis M. Wood*
By: Alexis M. Wood
alexis@consumersadvocates.com
**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
ALEXIS M. WOOD
KAS L. GALLUCCI
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Attorneys for Plaintiff
and the Proposed Class*